**UNITED STATES OF AMERICA,**
**Plaintiff,**

v.

**David MALIK, Defendant.**

**No. 02 CR 972.**

United States District Court,
N.D. Illinois,
Eastern Division.

July 1, 2003.

Markus T. Funk, U.S. Attorney, Chicago, IL, for Plaintiff.

Luis M. Galvan, Chicago, IL, for Defendant.

## MEMORANDUM

SHADUR, Senior District Judge.

As distasteful as this Court regards any child pornography offense to be, it is still essential (as with every criminal offense) "to make the punishment fit the crime." [1] Indeed, if the notion underlying the Sentencing Guidelines—that the effect of subjective judicial considerations on sentencing should be minimized—is to be credited at all, in a sense it is all the more important in the area of child pornography (where moral repugnance may run particularly deep) that the Guidelines be read and applied in accordance with the applicable statute and its purposes. In this instance, research has disclosed the clear inappropriateness of utilizing Guideline § 2G2.2 to measure the range of possible punishment

---

1. William Schwenk Gilbert, *The Mikado.*

for defendant David Malik ("Malik"), even though Count One of the indictment charges (and even though Malik has pleaded guilty to) an offense under 18 U.S.C. Section 2252A(a)(2)(A) (emphasis added):[2]

> (a) Any person who—
>
> \* \* \* \* \* \*
>
> (2) knowingly receives or distributes—
>
> (A) any child pornography that has been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer; or
>
> \* \* \* \* \* \*

shall be punished as provided in subsection (b).

That research obviously calls for an inquiry into the meaning and scope of the word "receives" in the just-quoted statutory section that is charged in Count One. And that inquiry is triggered by the patent fact that if "receives" were to be given its broadest conceivable range, the selfsame conduct on Malik's part could equally well have been charged under Section 2252A(a)(5)(B), which was indeed made the subject of Count Two of Malik's indictment and to which he has also pleaded guilty: After all, for anyone knowingly to *possess* child pornography (which is the comparable conduct that is rendered illegal under the latter statute), he or she must necessarily have *received* it unless he or she is actually engaged in the production of pornographic materials. That is concededly not the situation as to Malik, who unquestionably has engaged in no such production—nor did he assertedly traffic in such materials, having simply downloaded the materials involved in both counts for his own possession and viewing.

It is not simply the fact that the statute at issue in both Count One and Count Two

carries a Section 2252A designation, rather than having its own sequential numbering, that calls on the researcher to look to Section 2252 for answers. In all respects relevant to the present inquiry, Section 2252A (which was enacted as part of the "Child Pornography Prevention Act of 1996") echoes the essential language of Section 2252 (which was a 1978 enactment, as amended in critical fashion in 1984). That parallel between the two statutes is made obvious by laying them side by side. Moreover, even apart from that plain reading, the controlling legislative evidence—S. Rep. No. 104–358, at 9 (1996), 77 Fed. Appx.480, 1996 WL 506545, at \*9[3] says precisely that:

> Section 2252A mirrors with respect to "child pornography" (as that term is defined under section 3 of this bill) the prohibitions on the distribution, possession, receipt, reproduction, sale or transportation of material produced using an actual minor engaging in sexually explicit conduct contained in 18 U.S.C. 2252. The penalties in sections 2252 and 2252A would be identical.

Importantly, the history of development of Section 2252 reveals with startling clarity that the word "receives" in that statute—and therefore in its mirror image in Section 2252A—is not fairly to be read with the all-encompassing sweep that would, as to someone in Malik's situation, bring the far more severe terms of Guideline § 2G2.2 rather than Guideline § 2G2.4 into play. This memorandum therefore turns to that history.

As initially enacted in 1978, as part of the "Protection of Children Against Sexual Exploitation Act of 1977," the conduct prohibited by Section 2252 expressly targeted the commercialization of child pornography. Here is how the word "receives" was

---

**2.** Further citations to the Criminal Code will take the form "Section—," omitting the reference to Title 18.

**3.** Westlaw does not list the corresponding U.S.C.C.A.N. citation.

then included at the outset of the statutory definition of that crime (see the joint conference reports of the two Houses, H.R. 95–811 at 2 (1977) and S. Rep. 95–601 at 2 (1977), 1978 U.S.C.C.A.N. 40, 40):

(A) Any person who—

\* \* \* \* \* \*

(2) knowingly receives for the purpose of sale or distribution for sale. . . .

But experience during the next few years demonstrated that the harm to minors was not dealt with adequately by that prohibition, limited as it was to the sale or intended sale of such materials. So the Child Protection Act of 1984 embodied Congress' decision to expand the Section 2252 coverage to trafficking of a non-commercial type (for example, by gift or exchange), which was understandably considered to be just as deleterious to any child whose image was used to produce the pornography that was then (say) bartered rather than sold. Here is the portion of H.R. Rep. 98–536, at 2–3 (1984), 1984 U.S.C.C.A.N. 492, 493–94 that sets out the stated "need for this legislation":

Perhaps the most important limitation in existing law is the 'commercial purpose' limitation. Utilization of 18 U.S.C. 2252 has been inhibited by that statute's limited application to the distribution of child pornography only for commercial purposes ('for the purpose of sale or distribution for sale'). Many of the individuals who distribute materials covered by 18 U.S.C. 2252 do so by gift or exchange without any commercial motive and thus remain outside the coverage of this provision. Those persons who use or entice children to engage in sexually explicit conduct for the purpose of creating child pornography do not violate 18 U.S.C. 2251 unless their conduct is for pecuniary profit. (Although Section 2251 does not contain express language of a commercial requirement,

such a requirement is imposed by the definition of 'producing' in Section 2252(3) which imposes a for pecuniary profit requirement). Since the harm to the child exists whether or not those who initiate or carry out the schemes are motivated by profit, the subcommittee found a need to expand the coverage of the Act by deleting the commercial purpose requirement.

And that specific goal was accomplished by the simple device of striking out the language "for the purpose of sale or distribution for sale," leaving only the word "receives" in place—the precise form of the statute as it exists today.

It is beyond question, then, that the resulting retention by Congress of the word "receives" simpliciter in Section 2252, and thereafter in Section 2252A by verbatim reproduction, did *not* reflect any congressional intention to subject the identical conduct on the part of a defendant that constituted his or her mere possession of such materials—and that could therefore receive punishment of no more than *five* years under Section 2252(b)(2), and in turn under Section 2252A(b)(2)—to the potential of a *fifteen* year term under Section 2252(b)(1), and in turn under Section 2252A(b)(1), just because the material had come into that defendant's *possession* as the necessary consequence of his or her having *received* it. And the absence of any such purpose—the absence of any such intended rationale for a statutory amendment that had been expressly adopted to accomplish a wholly different goal—really carries with it two corollary conclusions:

1. Those prosecutors who charge offenders whose guilt derives only from the possession of such materials, with no element of trafficking, are inadvertently doing violence to the congressional scheme. This Court uses the term "in-

advertently" advisedly, for it took some searching to reveal the fact that what would also seem logical as a matter of common sense (though admittedly not free from ambiguity as a literal matter) is actually and directly reflective of how the statute came to read the way that it does.

2. That in turn carries forward to the related proposition that any automatic invocation of the far more severe Guideline § 2G2.2 (rather than Guideline § 2G2.4) to deal with criminal conduct that should properly be charged under Section 2252A(a)(5)(B) (rather than under Section 2252A(a)(2)(A)) does equal violence to a defendant. Nothing said here should of course be mistaken as a criticism (or even an implied criticism) of what has been said in *United States v. Sromalski*, 318 F.3d 748 (7th Cir.2003), which in dictum suggested such an automatic reference. Because *Sromalski* dealt with an offense that had actually been charged under the less serious Section 2252A(a)(5), which deals explicitly with possession, our Court of Appeals had no occasion there to look into the proper scope of Section 2252A(a)(2) in the way that this memorandum has done. Even so, *Sromalski* did pick up on the congressional purpose that marks the distinction between the two types of charges and the dramatically enhanced punishment under one rather than the other (*id.* at 749) (emphasis added):

> Even though Sromalski could have been charged with receipt of child pornography, which is prohibited by 18 U.S.C. § 2252A(a)(2), the information filed against him (after an original indictment was dismissed on the Government's motion) charged only a violation of 18 U.S.C. § 2252A(a)(5), which prohibits knowingly possessing child pornography that has traveled through interstate commerce, including by computer. *The information*

> *made no reference to any trafficking activities in which Sromalski may have engaged—a fact that plays a central role in this case.*

■ What this memorandum's analysis has done, then, is to unlock the mystery under which the identical Count–One-charged conduct on Malik's part, which could properly have formed the gravamen of a knowing *possession* charge under Section 2252A(a)(5)(B), might also—*if*, that is, the word "receives" were to be read as totally unfettered by any constraints—be the possible predicate for a far more serious conviction on a knowing *receipt* charge under Section 2252A(a)(2)(A). When instead such an obvious ambiguity in the statutory use of the word "receives" is resolved to reflect the specific congressional intent for the change in statutory language (or even through an application of the rule of lenity), it becomes clear that Malik's guilty plea to Count One cannot be sustained. Why? Because his mere *possession* of the pornographic image that is referred to in Count One does not constitute its prohibited *receipt* within the *intended* meaning of the latter term. Instead, Malik must rather be viewed as guilty, under Count One, of the lesser included offense of Section 2252A(a)(5)(B), because one element of the more egregious offense as intended by Congress is lacking.

This Court must therefore modify its earlier acceptance of Malik's plea of guilty to the Count One charge to that extent. And that being so, its sentence on both Counts One and Two will be measured by the standards of Guideline § 2G2.4 rather than § 2G2.2.

■ But even were that not the case as a matter of statutory construction (as this Court has just held), the *sentencing* response to Malik's actual Count One conduct—his receipt and possession of the prohibited material that involved no ele-

ment of trafficking, whether for pecuniary gain or for the receipt (or expectation of receipt) of some other thing of value (such as a bartered item or items)—should be the same. That is so because the crime of mere receipt and consequent possession that is ascribed to Malik, and that he has acknowledged, is outside of the heartland marked out by Guideline § 2G2.2.[4] So that alternative route also leads to the same destination—Guideline § 2G2.4—this time by way of an appropriate departure downward, if that were required.

### Conclusion

It would seriously distort the statutory structure to look to Guideline § 2G2.2, which under the November 1, 2000 version of the Guidelines (the version that is applicable to Malik's October 2001 offenses) would establish an offense level of 20 and, given Malik's criminal history category III, a consequent guideline range of 51 to 63 months, rather than looking to Guideline § 2G2.4, with its offense level of 16 and resulting 27 to 33 month range. And that is so even though Count One of the indictment has charged, and Malik has pleaded guilty to, a violation of Section 2252A(a)(2)(A). For each of the reasons (and under either approach) set out in this memorandum, this Court will look to the less punitive Guideline section in sentencing Malik.

### SUPPLEMENT TO MEMORANDUM

After the commencement of the sentencing hearing in this case, on June 27, 2003 this Court deferred the completion of the hearing to today's date to permit counsel and this Court to explore the troublesome problem created by the interaction of two sections of the Criminal Code and two

provisions of the Sentencing Guidelines under the circumstances posed by the two-count indictment against David Malik ("Malik"). Although at that time this Court directed the parties' counsel to provide submissions as to the legislative history of 18 U.S.C. § 2252A(a)(2)(A)[1] (and perhaps of Section 2252A(a)(5)(B) as well), this Court just as promptly looked into the matter itself—and having done so, it swiftly issued its July 1 memorandum ("Memorandum") to reflect the results of its own search and thus to focus the parties' submissions more sharply on the matter.

It appears that the issuance of the Memorandum may have discommoded the Assistant United States Attorney assigned to the case somewhat, because he had in turn substantially completed his own work (although his submission was not due until July 7) before receiving the Memorandum. Although this Court regrets any added work that may have been occasioned in that respect, the issuance of the Memorandum was far more constructive toward the ultimate goal of imposing a legally sound sentence than if government counsel had first submitted his own memorandum, only to be confronted with the product of this Court's own review on the ultimate sentencing date. Indeed, on July 3 government counsel filed a motion for reconsideration that both reflected his own research and sought to respond to what this Court had said in the Memorandum.

■ In any event, this supplemental memorandum is intended to reflect one of the instances of serendipity that arise with surprising frequency in the course of a District Judge's work. This Court has just received the current batch of slip

---

**4.** It is no accident that the focus of that Guideline, as evidenced by its caption, is in terms of *trafficking* rather than merely possession. And the Application Notes to that Guideline deliver the same message.

**1.** All further references to Title 18's provisions will simply take the form "Section—."

opinions from our Court of Appeals that are delivered to chambers on a weekly basis, and one of those opinions bears directly on the issues addressed in the Memorandum in a way that impacts on Malik's sentence. Here is the highly relevant excerpt from *United States v. Jefferson*, 334 F.3d 670, 675 (7th Cir.2003):

> Although we must keep in mind that ambiguity in criminal statutes should generally be resolved in favor of lenity, *United States v. Lange*, 312 F.3d 263, 266 (7th Cir.2002), this maxim must of course yield to the paramount consideration—to follow congressional intent. Here, our best evidence of congressional intent is the legislative history....

That might well have been written for this case. As the Memorandum has indicated, "receives" in Section 2252A(a)(2) is ambiguous: It has the potential for being read in the sweeping fashion urged by the United States, but it also has the potential for being read (like the other term "distributes" with which it is coupled) as targeting conduct that involves trafficking in child pornography (rather than receipt for mere possession). And if congressional intent is indeed "the paramount consideration" in resolving such matters, as *Jefferson* says, again the best evidence is found in the legislative history—and the memorandum has spelled out in detail why that legislative history flatly negates the breadth of the statutory application to Malik's criminal conduct that is urged by the government.

What the government's submission plainly confirms is that no reported decision has ever troubled itself to learn, as this Court has, just how Section 2252A(a)(2)(A) came to use the term "receives" simpliciter. It is backward reasoning for the United States to point to the Sentencing Guidelines as somehow overriding the congressional purpose in enacting the statute in its present form. Instead, once the puzzle is unlocked by discovery of the reason that the statute reads as it does, the proper Guideline handling follows from the identity of Malik's Count One conduct to that targeted by Section 2252A(a)(5)(B).[2]

This supplement accordingly buttresses what was said in the Memorandum. That reinforcement reconfirms this Court's resolution of the matter as set out there.

July 10, 2003.

---

2. Page 8 of the government's memorandum, which argues for the possibility of the knowing possession of child pornography without ever having received it, is extraordinarily strained. Its improbable examples scarcely account rationally for a congressional determination that offenses in the mere possession category should carry a maximum possible sentence of five years, while the Section 2252A(a)(2)(A) offenses carry the potential for a 15-year sentence.